## In re J. H. SMALL SHOE CO.

(District Court, S. D. New York. February, 1924.)

No. 33317.

Bankruptcy ⬳303(3)—Evidence held to warrant order requiring officer of bankrupt corporation to pay over certain amount to trustee.

Evidence as to funds withheld from trustee by president and treasurer of bankrupt corporation *held* to warrant order directing him to return certain amount to trustee.

In Bankruptcy. In the matter of the J. H. Small Shoe Company, bankrupt. On motion to confirm report of special commissioner in turnover proceedings. Modified.

Lesser Bros., William Lesser, and Samuel L. Miller, all of New York City, for trustee.

Marcus Helfand, of New York City, for Joseph H. Small.

AUGUSTUS N. HAND, District Judge. This is a motion to confirm the report of Seaman Miller, special commissioner, recommending that Joseph H. Small be required to turn over $20,000 to the trustee in bankruptcy.

Small was the president and treasurer of the bankrupt. I have rarely seen a more daring piece of effrontery than his conduct and testimony and that of some of his witnesses. In spite of this, however, there is difficulty in adopting the findings of the special commissioner in toto, because they are in part based upon the report of an accountant, who worked without books and reached conclusions by ex parte verifications of bank statements and other documents not in evidence. There are certain items, however, with which the respondent is chargeable by his own testimony and that of other witnesses. I have limited my decision against him to these, because Mr. Helfand's motions to strike out on pages 16, 17, and 18 of Levin's testimony would seem to render much of the latter's testimony inadmissible.

Small has totally failed to account for $5,500 received from. Walker upon the first sale of shoes, and at least $4,000 derived from the second sale, which he claims to have turned over to three mythical personages, bearing the names of Golden, Ruder, and Eddie Smith. His story as to the first item is that he paid $3,000 of it to one Samuel Levy. He says he gave Levy a note for this, but destroyed the note after it was surrendered. He testifies that Levy is a bookmaker, "a transient sort of a fellow"; that he does not know where he lives, but used to see him in New Haven; and that Levy said, after the loan was repaid, that he was going to Havana. The remaining $2,500 of the first item Small says he gambled away in New Haven in a student's room, the same day he repaid Levy. He can give nothing about the whereabouts either of Fromer or Harry Noble, or other students supposed to have been in the game of poker.

The story about Golden, Ruder, and Eddie Smith is still more illusory. He claims to have turned over pearls and safety razors costing $2,500 to these three to sell, and to have purchased this merchandise at an unascertainable place on the East Side. They are described as individuals hanging around the Hotel Astor. He can give no address or information about these fabulous creatures. The only possible reason even for suspecting the truth of such a story is a certain wonder whether a man could make it up. However, attempts to account for the disappearance of assets in like ways have been too familiar in bankruptcy cases to be any longer the subject of original invention. The $4,000 sought to be explained by the Golden, Ruder, and Smith story is rejected, as well as $500 more said to have been lost in gambling. A respondent like Small, buying thousands of dollars of merchandise, who produces no books, whose wife testifies she destroyed his paid checks every month, who, though doing a trifling business, purchases $35,000 of merchandise for a corporation just before his failure, and sells practically all of it to or through an auctioneer, cannot expect successfully to account for the proceeds of these sales by such stories. It is to be noted that by his own statement he seeks to explain the disappearance of $2,500 of the funds of an insolvent corporation by losses which he sustained at a poker game. His employment of corporate funds to pay his personal gambling debts was a clear embezzlement.

An order directing the respondent to return to the trustee $10,000 is granted, and the report of the special commissioner is modified accordingly.